Next case for the morning is 21-8088, Cupps v. Pioneer Canal-Lake Hattie Irrigation District. Counsel for appellant, would you please make your appearance and proceed. Good morning. May it please the court. Counsel, my name is Brandon Jensen. I'm an attorney from Cheyenne and I represent the landowners in this case. This case concerns the scope and extent of a right-of-way for a reservoir situated on federal lands near Laramie, Wyoming. The defendant, the irrigation district, contends that the scope of its right-of-way should be the physical limitations of the dam and the spillway. However, this is not the first appeal to this court in this case. In the original appeal, this court held that the boundaries of the right-of-way were to be determined solely by a reference to the map that was approved by the Department of the Interior. I quote. Was that the word solely or did they use the word anchored? They did not use the word solely and I do not recall. Well, then that was a misrepresentation for you to such so emphasize that word. I know that the word anchored was there, but that's very different from solely. So I think it's a little misleading. So try to be as strict to the information and facts as you can. And I would quote the decision of this court that said other factors other than the map that arguably could be advances bearing on the scope of its rights. Are irrelevant. Those are the words of this. That's a fair defense. That's fine. Thank you. I understand it now. This court also said that the approved map depicted a specific geographic area. So on remand, despite overwhelming evidence to the contrary, the lower court determined that the right-of-way boundary could not be located based on the map because the map contained errors and was otherwise unreliable and inaccurate. Isn't there a point in which the map would become so flawed that one would have to deviate from the map? I would say if the irrigation district cannot rely upon its own map to find its own right-of-way, there is a valid argument that they never met the requirements of the statute in the first place and that it's right-of-way should be declared invalid. I would say that is not the position we have taken in this case. That is not what we want to see happen. The right-of-way can in fact be found on the ground with the map that has been approved by the Department of the Interior. And in fact, has been found on the ground on two separate occasions by more than one surveyor using different methodologies, different equipment, and more than 70 years apart. And so it is your position then that given the fact that they did present this map and it was approved by the Department of Interior, that even if it's been shown subsequently that there were errors in that map, they're stuck with that map. Correct. Okay. And I would cite, I believe there is over 100 years of case law that comes from not only this circuit, but from the Supreme Court saying it is not what you want the map to show, but what the map actually shows on the ground. There is a variety of surveying standards and methodologies that have been developed over time to account for errors and discrepancies that occur in a survey. And the surveyor's mistakes in this case do not impeach the overall integrity of the survey. It can in fact be located on the ground today. For example, the BLM was able to locate the right-of-way on the ground in the 1940s. And in that time, obviously, they did not have the benefit of computers or GPS. What they did in fact have the benefit of were monuments set by the original surveyor. And those monuments are key in the fact that as the BLM went along the route and measured so many feet in a certain direction, and when they reached the end of that distance, there was in fact a monument on the ground set by the original surveyor. And as they turned the corner and went another certain specific distance, there was yet another monument. And in fact, on this section alone, there were no fewer than 12 monuments set by the original surveyor that the BLM relied upon to find the true location of the boundary of the right-of-way. Didn't the district court have some concerns about the BLM resurvey, specifically related to their failure to determine a high water line and the spillway elevation? I mean, the district court did express some concern about how much we could rely upon the BLM resurvey to validate the Rosencrantz line. Am I recalling that correctly? Yes, you do recall it correctly. And I would say that the prior decision from this court says that elevation or the elevation of the spillway or the high water line, any of those other characteristics are irrelevant. They do not matter in terms of laying out the boundary of the survey. The survey can be located on the ground, irregardless of the high water line, the elevation of the dam, or any of those other characteristics that both the lower court and the defendant have called out into question. So, counsel, what are you asking us to do? Or what are you asking us to say in reverse, based on the fact that the district court didn't take this court's previous decision seriously? And just reiterate that the district court can only look at that original survey? Is that what you're asking us to do? No, with all due respect, Your Honor, because I think that's already been done. What we're asking the court to do is to reverse the lower court and say you cannot have the right-of-way based specifically on an elevation. And the second part of this, we would ask this court to order the lower court to use the BLM's resurvey as the boundary of the reservoir. That survey has stood for 70 to 75 years. That survey defined the boundaries and the rights-of-way of all the parties in this case. That survey was based on compelling evidence found on the ground that's attributed to the original surveyor. That survey has been monumented and staked into the ground permanently for all time so that all parties and all surveyors that come thereafter can find the actual boundary of that line. Because the BLM confirmed the Rosencrantz line? Correct. Judge Ide raises a very good point in terms of just thinking procedurally how this ends up. Let's assume for the moment that we were to reverse and let's say it says something like district court considered factors that we had determined in the first case were irrelevant. Reverse that judgment on that ground. What really remains to be done? That goes to the question of the notion of as often we are reluctant to micromanage further proceedings. Therefore, what I want to know is what essentially do we have to do beyond reverse and what really remains for the district court to do if it were the case to go back under that circumstance? If I understand your question. My point is if we said reverse, the district court considered irrelevant factors and we say remand for further proceedings. What are those further proceedings? What remains to be done? It would still need to be the matter of making sure we know exactly where the boundary is on the ground. And then their phase two of the case would be damages if any owed to the plaintiffs. Okay. All right. And that's your clients. You said that there was a survey that you want to rely on that does put it on the ground. So why would you do anything more than just simply say reaffirm that earlier survey? And that in our opinion, that would resolve the matter. That's what you want. But the first case didn't deal with that. Right. Correct. Okay. So what you're saying is ideally from your point of view, what would happen is there are two phases. Two things have to happen in further proceedings. One, what's the line going to be? Two, the issue of damages. If I understood your answer, Judge I, it would be your preference anyway if we were to reverse that we say what the line is. The line is going to be the BLM resurvey and then the only question that remains after that is damages. Correct. Okay. Counsel, I want to just because you paused. Can you please help me understand why there's federal jurisdiction over this case? Wow, that goes back to the original appeal. This involves a federal right of way on federal lands. The scope of the defendant's right of way for the reservoir is based on a federal statute from the 1890s and it sits on federal land. So there was precedent from this court and you'll have to excuse me, I haven't looked at that case law in a long time. But there is precedent from this court that says a federal statute and a federal right of way provides federal jurisdiction for the federal courts to decide this matter. And it was entirely on federal land. There was no private land involved. Except for the plaintiff's land that lies adjacent to the reservoir. It is our contention that the entire scope, if you based on the original map, isn't the scope of the reservoir lies entirely on federal land. We also think that there is also additional grounds for reversing the lower court's decision. It based its decision on virtually everything that this court found was to be irrelevant. Such as elevation, the invisibility of using the reservoir, the height of the dam, the intended high water elevation. And I would also note for the fact that the defendant's own surveyor testified repeatedly at trial that none of this elevation that was set forth by the district court is in any way based on or can be relied upon the original approved map. That they are two completely separate things and one is not the other. Let me shift gears for a quick second here to talk about the district court's decision as it related to the 50 feet on each side. The 946 grant of right of way, 50 feet on each side. Yes. Why? It's my understanding, maybe incorrectly, I thought that you disagreed with that determination. I do disagree. Okay, well then go ahead Tanish. The statute, section 18 of the statute does provide for 50 additional feet. But section 21 of the statute says nothing in the prior sections. Nothing in the prior sections shall authorize a canal or a right of way except only so far as may be necessary for the construction, maintenance and care of site canal or ditch. And why doesn't that just speak to how you use your 50 feet? It goes back to the original 50 feet should have been approved by the Department of the Interior. Well the statute says you get 50 feet. Why does the Department of the Interior have to do anything about that? Because section 21 of the statute says that 50 feet is only if it's necessary for the construction, maintenance and care of the reservoir. It didn't say 50 feet. It says whatever went on before as long as it's necessary for these acts that you listed. But I guess my point is, why can't one not construe that language as just cabining what you do with the 50 feet that the unambiguous language of 946 gave you to begin with? That would be one construction. It's our position that the reference to the 50 feet is also in a sentence that says to the extent of the ground occupied by the water of the reservoir and 50 feet. This court held in the prior case that the language to the extent of the ground occupied by the reservoir is subject to the approval of the map. So if that language to the extent of the ground occupied by the water of the reservoir is subject to the approval of the map, so must be the additional 50 feet. Because both of those provisions come from the exact same sentence. All right. Unless there's any further questions, we would ask that this court reverse the lower court and I would reserve the remainder of my time for rebuttal. All right. Thank you, counsel. May it please the court. Counsel. Good morning. I believe we're no, we're not. We're in the afternoon. Greg Weiss of Pinson Macmillan, LLC, Cheyenne, Wyoming on behalf of FLE, Pioneer Canal Lake Addy Irrigation District. I'd like to begin by correcting a couple of misstatements. The district court decision absolutely unequivocally was not based on elevation. And in fact, after the 10th Circuit remand from 2019, the district court judge said, I will not make my decision based on elevation. And the surveyor hired by my client, the only surveyor that went out and conducted a survey after the 2019 remand. He specifically and repeatedly said he did not make his determination as to the location of the Rosecrans right of way line using elevation. This is, this is a reservoir that has three dimensions, length, width, height. Necessarily as part of that consideration, every point along the line, wherever the right of way line is, every single point is going to have an elevation. It's obvious. Every point in this room has an elevation. But the surveyor hired by my client, whose crew invested over 700 hours of time at the reservoir, in contrast to actual zero hours of time spent by the plaintiffs conducting a full survey of the reservoir. And let's talk about that for a second. Well, why 700 hours to begin with? You had a Rosencrantz map. You had the BLM who did a resurvey of that map. Well, the only thing that, and why is it a natural inference that you spent those 700 hours trying to determine that those two surveys are wrong? And if you did that, why is that relevant at all? It's just demonstrative of the fact of how much time the surveyor spent trying to reconcile the problems with the Rosencrantz map and with the BLM survey. And if they are problem riddled, what difference does it make? That map was approved by the federal government, and that is, at least by the statute and by the law, the case of the first case. You're stuck with that, aren't you? I'm absolutely stuck with it, and I'm happy to be stuck with it, because here's what happened on remand. The district court, taking a look at this decision from this court in 2019, said, okay, we're going to confine the discussion of the second trial based upon what's in the Rosencrantz map in the survey. Here's what Rosencrantz map says. He intended to lay out a level line, and the plaintiffs on surveyors said a level line is a line at one elevation. Second, the Rosencrantz map, and this is on the face of the map, says that this is the proposed line of the reservoir, because the reservoir wasn't built yet. He also said that, in his field notes, that he intended to establish the true water line, and also on the face of the Rosencrantz map, is a specific statement that says, this right away is being required under the 1891 Act to store irrigation water for the purpose of storing irrigation water, which is exactly what section 946 says. And so what the surveyor did by all of his time is, as he went out and conducted the survey of the entire perimeter of the reservoir, and this is why the time is significant, because as he did that, he noticed a lot of problems with the Rosencrantz survey. And in fact, that's a key point to emphasize, is that there was new evidence. And Judge Holm, you asked, I believe, you know, at some point, couldn't the map become so flawed you have to look elsewhere? Well, in this case, the surveyor did not look elsewhere. I'll touch on that in a moment. But what he said is, the Rosencrantz map had so much error, both in the courses and the distances of the courses, that he was forced to try to take account of all of those errors. The most significant testimony from trial, hands down, was the admission by the plaintiff's own surveyor that said the line that he believed should be the right-of-way line. He admitted that as every new surveyor goes out and tries to locate that line, they're not going to be able to locate that line in the same place because of the errors that were in the Rosencrantz survey. He admitted it. He said, I used a different method than the surveyor copied, the irrigation district surveyor, to try to take account of Rosencrantz errors. And upon questioning, he admitted that as every new surveyor goes out and tries to identify the location of that line, they're not going to be able to replicate that. And the key reason this court reversed in 2019 was the district court's determination that the right-of-way line is transitory. And of course, after that, after the 2019 decision, on behalf of my client, I petitioned for rehearing. It was denied. And I'm glad it was denied because what occurred to me as I read the decision and we prepared ourselves for trial is that, in fact, there does need to be certainty as to the location of the line. Everybody's got to know where that's at. And the line that the appellants assert should serve as the right-of-way line is transitory. Their own professional engineer admitted that over time, that's going to change. It's not going to change with the high water level. And the fact that you would do a resurvey, the BLM staked out the Rosencrantz line and they confirmed, did they not? I mean, and again, we're not talking about whether the Rosencrantz survey was flawless. What we're talking about is whether we had a government entity that came along, I guess, what, 40 years later or something like that and did their own confirmation of that. And so you have a line. Do we not? I mean, why is that transitory to the extent that the BLM confirmed the line? So we know that the Rosencrantz map, which was approved by the Department of Interior in 1923, the court should remember that the Department of Interior approved the level line. When the BLM went out and surveyed, reportedly resurveyed the Rosencrantz line, they knew, they should have known that there was a big problem because as they were laying out, the portion of the Rosencrantz line goes in front of the cabin lots. The line that they said is the high, this is the Rosencrantz line. It went under the surface of the water that they encountered at that time. If that's so, how could that BLM survey line be accurate? And in fact, there was a reference to monuments that were placed by Rosencrantz. The testimony in trial was not that Rosencrantz placed any monuments. His survey notes are devoid of any reference to monuments. What the BLM did is they retraced that part, and it was just part of the Rosencrantz line. They laid out some monuments, and those monuments differed in elevation dramatically. Some of those lines, some of the line that the BLM laid out was actually below, below the depth of the line of the lake. So the monuments were above the spillway. The monuments were laid out by the BLM and not by Rosencrantz? Absolutely. There was testimony from my client surveyor that there was absolutely no evidence that some wooden stakes that the BLM found were monuments that had been placed by Rosencrantz. There's a long discussion in the testimony about the pedigree of a monument, and when a surveyor places a monument, they are to put that in their survey notes, and that did not happen with Rosencrantz. But the point about the Rosencrantz survey and the BLM's attempt to retrace it is that the BLM was directed to establish the high waterline of the lake. The BLM did not do that. Had they done that, we wouldn't be here today because they were instructed to separate the plaintiff's cabin lots from the high waterline of the lake. Instead, they went out and they conducted the survey before the survey instructions were completed, by the way, and as they did so, they ran across the point where the line went under the water that they didn't encounter in the fall of the year. That should have told the BLM, there's a problem here. Why is our retracement of Rosencrantz level line, why does it go below the surface of the water? Let me ask a fairly fundamental question that will lose me the answer now, so I want to hear it from you. What is the legal effect of the BLM's resurvey? I mean, the BLM purported to be confirming and validating the Rosencrantz line. I know what the effect of the Rosencrantz map is. What is the legal import of what the BLM did? The legal import of what the BLM did is they created the cabin lots, but my brief cites case law that says that a resurvey of the Rosencrantz line by the BLM cannot affect the easement that was granted and approved by the Department of Interior to the Irrigation District. It can't approve the easement, which was reflected in the map that was submitted to the BLM. Is that what you're saying? I'm saying that the BLM resurvey cannot alter the boundaries of my client's right-of-way easement under the 1891 Act. Yes, but what defined your client's rights, were they not the Rosencrantz map that was submitted and approved by the government, the Department of Interior at the time? And I guess my point is this, and what I want to get clear, when the BLM came out and did their resurvey purporting to validate the Rosencrantz survey, which had been approved, the Rosencrantz map, when they did that, what deference do we owe that process? Because it purported to be the government validating what the government had previously approved. And so my question to you is, what is the level of deference that is owed to that? This court owes no deference to that. And what is the case that you can give me that says that? It's in my brief, Your Honor. I point out that a resurvey of the Rosencrantz line cannot affect the right-of-way granted and approved by the Department of Interior. Well, it cannot affect if they did something dramatically different, but if the determination was made that they really validated what the Rosencrantz map did to begin with, then all we're doing is saying that we're adhering to what the Rosencrantz map is, which you, as a matter of law, I know you are bound by that. And so if the BLM comes out and does that, I guess what I'm getting at is what seems to be a scenario that's playing out here. You have the BLM do its resurvey. They say this is what we find the Rosencrantz line to be. Then you hire somebody to come out and say, well, you know, there are flaws in both what the Rosencrantz did and what the BLM did. So listen to us. Take our resurvey. What basis do you have for us saying we're going to choose that, your survey, over this that's over here? Thank you for asking that question, Your Honor. It is because my client relied on a portion of the Rosencrantz survey. Dave Coffey, my client's surveyor, said, you know what, I looked at the retrace line, and there was a portion of that line that demonstrated Rosencrantz intent. And it's an intent that governs when a survey has errors. And what he said is, I found strict conformity between the location of a portion of the retrace Rosencrantz line with my survey for 2021 in the area of the spillway in the dam. And my client's surveyor said, there's a portion of the Rosencrantz survey, the map, that does in fact show what his intent was and shows where he intended to establish his level. Well, the fact of the matter is the government didn't approve a portion of the Rosencrantz map. It approved the Rosencrantz map. And so this idea of discerning what Rosencrantz's intent was, I mean, why is that even relevant if it's only based on a portion of the map? Because it's critical that they did approve the entirety of the map. And this court said in 2019, look for conformity. The line that Rosencrantz laid out was fixed to the original topography of the ground. It's in page 23 of this court's 2019 decision. But as I close, let me make one point. The line, as asserted by the appellant, that should serve as a right-of-way line is absolutely in derogation of the 1891, because that line is located in part below the dead pool elevation of the reservoir. And as a result, if that line is to serve as the right-of-way line, absolutely no water could be stored by the irrigation district. There was testimony at trial to that point. And so it would render the easement meaningless if that line served as the right-of-way line. Thank you, counsel. Chief, can I ask a couple of additional questions? Of course you can. So that means that you're not really arguing we adopt the BLM resurvey because you say that that survey would say that no water could be stored. The line, as asserted by the appellant, would allow storage of no irrigation water because it relies... The line by the BLM, that would allow water, would it not? No. No. Because the appellants are relying on the retracement done by my client, which purports to line up with the BLM resurvey. They're one and the same according to the appellant. We have the BLM survey. Do you support that survey? Does that survey allow water in the reservoir or not? It does not, your honor. It absolutely does not. If the court has no further questions. Thank you. Thank you, counsel. Let's see. Okay, please, counsel. Just a couple of quick points. The reservoir can store water. The BLM's resurvey took place 40 years after the reservoir had been constructed. And the Federal Register notice in which it published its intent to divide the lands, which eventually went to my client, specifically says the reservoir has been operating at capacity up to this point for the last 30, 35 years. Remind me, what is the legal import of the BLM resurvey? In other words, if we ended up in a world, which I think we're in this world, where you have the coffee survey and its work, and you have the BLM survey from 40 years ago, what gives weight to the BLM survey as a matter of law vis-a-vis this new evidence that comes in from the coffee survey? The BLM survey is entitled to substantial deference, because that is a special expertise that is used by an agency of the federal government. And they use that expertise in terms of not only identifying the boundary of the reservoir, but delineating the boundaries of the plaintiff's properties as well. You have cases in your brief regarding that. Okay, thank you. And when the BLM, the deeds to the plaintiff's property were issued after that BLM survey? Yes. And it relied on the BLM survey? Relied, I think he says. Yes, yes. You could not acquire the private property in this case, unless you built a structure on it and then paid the federal government money. So, yes, in order to get the land, they had to rely on the BLM survey. That's what subdivided the property. And the BLM survey is the only one that put any monuments on the ground? No, I would disagree with that point. The BLM did put permanent markers on the ground, but it is our contention that the original surveyor also used markers on the ground. And as I said earlier, it's true that the Rose Cranes field notes do not make reference to the fact that he put monuments down. However, those monuments are found at specific angle corners, and the defendant's own surveyor said, yeah, there's no other plausible explanation for those monuments other than that they were laid by the original surveyor. No further questions. Thank you, counsel. Thank you both for your fine arguments. Case is submitted.